RECEIVED
JUN 26 2019
U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

CHRISTOPHER D. EUSTICE,

    **Plaintiff,**

v.                            Civil Action No. 18-CV-1008-SDD-RLB

STATE OF LOUISIANA THROUGH THE     Jury Trial Demanded
BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE; *et al.*

    **Defendants.**

## REPLY MEMORANDUM OF PLAINTIFF IN OPPOSITION TO INDIVIDUAL LSU DEFENDANT'S MOTION TO DISMISS

Plaintiff Christopher D. Eustice ("Plaintiff" or "Mr. Eustice") respectfully submits this Reply Memorandum in Opposition to Individual LSU Defendants' Motions to Dismiss. On April 1, 2019, Plaintiff Pro Se filed a timely Amended Complaint as a matter of right in response to Defendants' Motions to Dismiss within the 21-day limit provided by Fed. R. Civ. P. 15(a)(1)(B), asserting additional allegations and adding three new Defendants: (i) Fieldon King Alexander, (ii) Bart Thompson, and (iii) Andrew Palermo. (Doc. # 20). These Individual LSU Defendants filed a 12(B)(6) Motion to Dismiss, and Plaintiff is responding to that motion. Plaintiff timely filed a Second Amended Complaint as a matter of right against these defendants on June 6. Plaintiff filed a response to defendant's motion to dismiss on June 6, suggesting mootness of the motion due to the second amended complaint. This motion has not yet been ruled upon. Out of an abundance of caution, Plaintiff submits this reply memorandum for consideration. Plaintiff incorporates all statements made in his Amended Complaint and Second Amended Complaint into this reply memorandum as if fully restated herein. The Second Amended Complaint has not yet been accepted by the court with respect to the other defendants.

1

## Introduction:

Plaintiff Christopher D. Eustice was wrongfully blacklisted and excluded from University Activities for being a man, and in his reasonable protest of this, he was arrested for being a man. His mugshot was posted online for the world to see and he was proclaimed to be a sexual predator. His reputation was wrongfully shattered as a result of a false and misleading sworn LSU Police Affidavit. This news article continues to appear as the very first result when Plaintiff's name is entered into Google.

As a result of his False Arrest and a well documented conspiracy, Plaintiff was also wrongfully suspended from LSU. LSU Police Officer Andrew Palermo upon information and belief was removed from his position for the very actions being complained of herein. Palermo was poorly trained and under the pressure of warped policies being promulgated by his superiors, Bart Thompson and LSU President Fieldon Alexander, and intentionally violated clearly established law with reckless disregard for the truth and with reckless disregard to facts which were clear to him at the time that he drafted a perjured Police Affidavit. Under Supreme Court case Monell v. Department of Social Serv., 436 U.S. 658 (1978), a municipal government can be held liable under Section 1983 if a plaintiff can demonstrate that a deprivation of a federal right occurred as a result of a "policy" of the local government's legislative body or of those local officials whose acts may fairly be said to be those of the municipality. Likewise, the local officials responsible for promulgating the policies in question may be held liable. As Plaintiff has clearly demonstrated in his amended complaint, he showed mild interest in and rarely contacted Megan Martter. Plaintiff has also demonstrated that there seems to be a policy being promulgated to arrest male students in all situations whenever a female complains and demands that charges be pressed. Further, Plaintiff mentions specific actions taken by President King Alexander that violated clearly established law and deprived Plaintiff of his constitutional rights. Alexander denied appeals or refused to review

appeals in violation of promises made by University Officials in their official capacity. Alexander is the Chief Policymaker at LSU and violated Plaintiff's rights under the 1st and 14th Amendment with respect to the SAA proceedings. Notably, the 5th circuit recently ruled that LSU promulgates unconstitutionally vague rules (see Buchanan v. Alexander et. al 5th Cir. 2019.) Although the professor in that case was denied relief because it is well established that swearing around young children is not protected by the 1st Amendment.

Officer Palermo summarily described the content of electronic messages sent from Sept. 7 through Nov. 7: "**the messages sent by Eustice included asking the victim if they could keep their relationship strictly physical, attempting to bribe the victim into letting him find her an internship or job and threatening to "blacklist" her and civilly use her. Things came to a head on Nov. 7 when Eustice emailed the victim saying he'd be serving her, alluding to a civil subpoena, at her home address in Nevada.**"

Palermo acquired an invalid warrant by offering no further details of the content of the messages. It is fundamental doctrine that the Fourth Amendment requires both probable cause and a valid warrant. See, e.g, Payton v. New York, 445 U.S. 573, 587 n.25 (1980); Agnello v. United States, 269 U.S. 20,32 (1925) ("The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws").

**The Officer gets no qualified immunity because the right to an arrest warrant without a Franks violation and material omissions that completely undermined the probable cause is well established, Winfrey v. Rogers, 2018 U.S. App. LEXIS 2829 (5th Cir. Feb. 5, 2018)** Further, it is up to the fact-finder, or the jury, to determine whether the warrant actually establishes probable cause. The fact-finder steps into the role of the original magistrate and simply repeats the probable cause inquiry. The reviewing judge should not give any deference to the magistrate's prior determination for the fundamental reason that the magistrate never reviewed the untainted facts.

3

See, e.g., Burke v. Town of Walpole, 405 F 3d 66, 82 (ist Cir. 2005); United States v. Kolodziej, 712F.2d 975, 977 (5th Cir. 1983); United States v. Namer, 680 F.2d 1088, 1095 n.12 (5th Cir. 1982) (holding no presumption of validity attaches to original magistrate's probable cause determination). A reasonable individual would read the affidavit and conclude that the Plaintiff was criminally attempting to extort sex from a female victim. A Judge thus granted this ex parte request for an arrest warrant, without having a chance to view the content of the real texts and emails. When the actual texts and emails are reviewed(see amended complaint evidence exhibits Docket #20), it becomes clear to reasonable individuals that the Plaintiff did not commit a crime, and that the probable cause of the sworn affidavit is completely undermined by the intentional omissions of Officer Palermo.

In Winfrey v. Rogers 901 F.3d 483 (5th Cir. 2018), a Police Officer who made similar material omissions when seeking an arrest warrant was denied Qualified Immunity because the omissions undermined the probable cause and the omissions violated clearly established law at the time the Plaintiff in that case had been arrested in the year 2007. The right to an affidavit without omissions that are designed to mislead, or made in reckless disregard of whether they would mislead the issuing Judge, (Franks violations) is well established. LSU Officer Palermo violated law that has been clearly established for over 10 years. See also Franks v. Delaware, 438 U.S. 154 (1978).

LSU seems to believe that the Plaintiff did not commit a crime and will be acquitted at trial. LSU filed a lengthy opposition to the motion to stay the case pending the resolution of the criminal proceedings. LSU Police Officer Andrew Palermo upon information and belief was removed from his position for the very actions being complained of herein. The Supreme Court has explained that neither the good faith exception to the exclusionary rule nor the immunity doctrines, which ordinarily protect law enforcement officers from liability under 42 U.S.C. § 1983, are applicable if

4

a warrant affidavit contains perjurious statements. See United States v. Leon, 468 U.S. 897, 922 (1984) (holding no good faith exception to exclusionary rule where affidavits contain perjurious statements); see also Groh v. Ramirez, 540 U.S. 551, 565 n.8 (2004)(reasoning no qualified immunity if good faith exception not applicable); Kalina v. Fletcher, 522 U.S. 118(1997) (finding no absolute immunity in § 1983 suits for prosecutor who certified an affidavit containing perjurious statements).

Defendants also unsuccessfully argue that the remainder of the untainted affidavit is enough to establish probable cause. This argument is clearly incorrect. To strike at the heart of the issue are the actual texts and emails attached to Plaintiff's amended complaint. There is no argument that the messages are completely noncriminal. Defendant tries to argue that when Megan Martter said "fuck off" that that implied that the Plaintiff had to legally cease all communications with her. In the proper context, this message was in response to a request for sex and in the context of Megan claiming to not know who the Plaintiff was. Plaintiff adjusted his behavior accordingly.

Even if the court finds that the remainder of the corrected affidavit establishes probable cause, which Plaintiff has clearly demonstrated it does not, the 5th circuit has rejected the "corrected affidavits approach." See, e.g, Kohler v. Englade, 470 F.3d 1104, 1111-12 (5th Cir. 2006) (rejecting information not provided in affidavit to original magistrate making probable cause determination); United States v. Hams, 464F.3d 733, 739 (7th Cir. 2006) (limiting consideration of exculpatory information only in affidavit review);United States v. Yusuf, 461 F.3d 374, 388-89, 388 n.12 (3d Cir. 2006) (limiting probable cause determination to information contained in affidavit).

Only the 2nd circuit uses the corrected affidavits approach when determining whether an arrest warrant is valid. Indeed, the Second Circuit's "corrected affidavits approach" encourages police officers to file intentionally or recklessly false warrant affidavits because they can never end

5

in a worse situation for doing so. Law enforcement affiants' intentional or reckless falsehoods serve only one conceivable purpose: securing the issuance of a warrant, which the magistrate might otherwise have denied. The police officer knows that a defendant might never challenge the affidavit, and only a small percentage will take civil action. Thus, the "corrected affidavits approach" "not only infuses extraneous information into the probable cause determination, but also allows the Government to receive the benefit of its misconduct. Yusuf, 461 F.3d at 388 n.12.

Palermo failed to properly investigate the complaint filed by Megan Martter, and did not reach out to her only named witness, Abdul Homran. Contrary to First Amendment doctrine, a Fourth Amendment duty to investigate is widely accepted in the case law. See Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999) (explaining "law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect ...."); see also Cortez v.McCauley, 438 F.3d 980, 990 (10th Cir. 2006); Somberger v. City of Knoxville, 434 F.3d 1006, 1014-15 (7thCir. 2006); Kingsland v. City of Miami, 382 F.3d 1220, 1229 (11th Cir. 2004). Of course, a law enforcement officer's duty to investigate is not limitless See Baker v. McCollan, 443 U.S. 137, 143-147 (1979) (finding no duty to investigate claim of innocence of person incarcerated on basis of properly issued arrest warrant).

Defendants argue that because there were Police complaints filed by 4 different LSU students, out of the tens of thousands of individuals who the Plaintiff interacted with during his 3 years at LSU, although no crime was committed by Plaintiff or discovered in those LSUPD investigations, that the plaintiff deserved to be arrested, defamed, suspended, and prosecuted. This sort of legal standard is unheard of in the United States. Further, it is Constitutionally offensive, and completely oppressive. If this was an acceptable legal standard for an arrest, then none of us would be safe from being wrongfully arrested and prosecuted when a vindictive or irrational person files a frivolous Police Report. Most notable is the fact that all 4 students knew each other and had

6

a reason to dislike the Plaintiff.

Defendants cite a legal authority out of Pennsylvania in order to argue that threats must be taken seriously. In that case a threat is defined in the following excerpt: "Finally, in J.S., a Minor v. Bethlehem Area School District, 757 A.2d 412 (Pa. Cmwlth.2000), the court affirmed J.S.'s expulsion because J.S. created a web-site on his home computer titled "Teacher Sux." The web-site consisted of several pages that contained derogatory comments about J.S.'s algebra teacher and other administrators. After viewing a picture of her severed head dripping with blood, a picture of her face morphing into Adolph Hitler, and a solicitation (whether serious or otherwise) for funds to cover the cost of a hit man for the teacher's execution, the algebra teacher had to take a leave of absence. The court, noting that the case involved off-campus activity, applied the Tinker standard and found evidence of substantial disruption, and further noted that:

in this day and age where school violence is becoming more commonplace, school officials are justified in taking very seriously threats against faculty and other students.... Given the contents of Student's web-site and the effect it had upon Mr. Kartsotis, Mrs. Fulmer and the school community, we conclude that the trial court properly determined that the School District did not violate Student's rights under the First Amendment."

This Pennsylvania Case does nothing to further arguments of the individual LSU Defendants. The Plaintiff has no history of threatening violence against others.

### **Summary of Case Facts:**

Mr. Christopher Eustice asserts that he graduated as valedictorian of his high school in 2012 and is an Eagle Scout. Mr. Eustice asserts that he experienced unfair scrutiny at Texas A&M University and transferred to LSU in January 2015. Mr. Eustice asserts that he will ultimately prevail in the ongoing legal battle against Texas A&M, and that LSU has thoroughly reviewed and determined on two separate occasions and with a hearing panel that Mr. Eustice was dismissed from Texas A&M

7

for the unjust reason of receiving a lab report from a fellow student after the due date for the assignment had passed. Mr. Eustice asserts that his problems with LSU were largely a result of retaliation due to filing a lawsuit against the close friends of LSU Administrator Matthew Gregory, who at the time was the President and 7 year member of a Texas A&M club for the very same student conduct administrators who the Plaintiff was suing. Dr. Gregory abused unconstitutionally vague student rules and recommended sanctions and a finding of responsibility to his hearing panels openly and in advance of his hearings. Dr. Gregory fabricated evidence and destroyed and covered up evidence that would have exonerated the Plaintiff. Dr. Gregory harassed the Plaintiff by filing 4 meritless cases against the Plaintiff.

A few LSU students abused the oppressive speech codes and unconstitutionally vague student rules and initiated proceedings against the Plaintiff for asserting his legal rights when they were violated by those students. Some of those students also bullied or harmed the Plaintiff through other means. The Plaintiff experienced problems with ADA accommodations and experienced first amendment retaliation and ADA retaliation on numerous occasions. The Plaintiff was falsely arrested by the LSU Police who violated clearly established law, and intentionally withheld facts and distorted an affidavit in order to mislead a judge into believing that the Plaintiff was trying to extort sex from a female student named Ms. Megan Martter, when he was actually being very considerate of others and simply asserting his legal rights. The Plaintiff acted reasonably in light of the abuse he was experiencing, did everything he could to deescalate the situation, and yet he became the victim of a warped agenda being promoted by administrators who openly display their gender bias. This warped agenda was developed in response to outdated Title IX policies previously promulgated by the Department of Education between 2011 and 2016. The exact guidelines that Universities were expected to follow were unclear, leading to panicked overcompliance by some Universities as they renewed their attention to eradicating all possible

8

sexual misconduct. These outdated policies resulted in some University Administrators being willing to violate legal and constitutional rights of students accused of sexual misconduct in order to keep their federal funding at all costs. These legal violations have resulted in lawsuits all over the nation brought by primarily male victims of gender discrimination. Plaintiff was ultimately suspended for a semester, and LSU has refused to readmit the Plaintiff in retaliation to his filed legal complaints.

## Rule 12(B)(6) Legal Standard:

A motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff could prove no set of facts in support of its claims that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45 46, (1957); Thompson v. Goetzmann, 337 F.3d 489, 495 (5th Cir. 2003); Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir. 2000). The complaint must be liberally construed in favor of the plaintiff and the allegations contained therein must be taken as true. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). Whether a claimant will ultimately be able to adduce evidence sufficient to support its claims on the merits is not a question for consideration in connection with the 12(b)(6) motion. General Star Indem. Co. v. Vesta Fire Ins. Corp., 173 F.3d 946, 951 (5th Cir.1999). Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana, 252 F.3d 781, 786 (5th Cir.), cert. denied, 534 U.S. 995 (2001); Lowrey v.Texas A&M University System, 117 F.3d 242, 247 (5th Cir. 1997) It is well-settled that liberal discovery rules and summary judgment motions, not motions to dismiss, should be used to define disputed facts and issues and to dispose of unmeritorious claims. Furstenfeld v. Rogers, No. 3 02 CV 0357 L, 2002 U.S. Dist.LEXIS 11823, at *5 (N.D. Tex. Jul. 1, 2002). Furthermore, the exacting standards governing Rule 12(b)(6) motions must be considered in light of the liberal pleading requirements of

9

Rule 8(a). Furstenfeld, 2002 U.S. Dist. LEXIS 11823, at *5. Federal Rule of Civil Procedure 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. A complaint will be deemed inadequate under Rule 8(a) only if it fails to: (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist. General Star Indemnity Company v. Vesta Fire Insurance Corporation, 173 F.3d 946, 950 (5th Cir. 1999). Except in a limited set of cases a plaintiff is not required to plead facts supporting each and every element of his claim or legal theory. Swierkiewicz v. Sorema N.A., 534 U.S.506 (2002). Rather, a complaint is sufficient if it "give[s] the defendant fair notice of what the plaintiff's claim[s] [are] and the grounds upon which [they] rest." Id., quoting Conley v. Gibson, 355 U.S. 41, 47 (1957). A pleading may give proper "fair notice" even where only the title of the theory is pled. In re Elec. Data Sys. Corp. "ERISA" Litigation, 305 F. Supp. 2d 658, 675(E.D. Tex. 2004); citing Woodfield v. Bowman, 193 F.3d 354,362 (5th Cir. 1999). With these standards in mind, Plaintiffs respond accordingly. Dismissal under Rule 12(b)(6) is disfavored and rarely granted. Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982). Under the 12(b)(6) standard, all well-pleaded facts must be viewed in the light most favorable to the plaintiff. Hale v. King, 642 F.3d 492, 498-99 (5th Cir. 2011) (en banc). To pass muster, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Id., quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Even if a plaintiff's complaint is found deficient under Rule 12(b)(6), the proper remedy is usually to allow the plaintiff to amend the complaint to cure any deficiencies, rather than dismissal with prejudice. Public Health Equip. & Supply Co. v. Clarke Mosquito Control Equip., Inc., 410 Fed. Appx. 738, 740 (5th Cir. 2010) (finding that district court erred in denying plaintiff's motion to amend complaint after dismissal under Rule 12(b)(6)).

## Argument

### A. Defendants' Motions to Dismiss are moot.

As Plaintiff has previously argued, the filing of an amended complaint moots any motions to dismiss the prior complaint by operation of law. (Doc. # 30 at ¶¶ 11-14) (citing *MMR Constructors v. Syngenta Crop Prot.*, 2010 U.S. Dist. LEXIS 53469, *3-4 (M.D. La. May 28, 2010) (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)); *see also Rodrigue v. Seafood Source of La., Inc.*, 2014 U.S. Dist. LEXIS 130172, *3 (M.D. La. Sept. 15, 2014) ("The parties' agree that Rodrigue's Amended Complaint 'mooted' Seafood Source's December 31 motion to dismiss."); *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008) ("When an amended complaint is filed, the prior pleading is withdrawn and the amended pleading is controlling."); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004) ("It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void.").2 Furthermore, three individual Defendants were just added to Plaintiff's Amended Complaint. Notably, each and every one of these individual Defendants: (i) are/were employees of LSU, and (ii) represented by the same counsel as LSU – and these individual Defendants' responsive pleadings are not due until May 28, 2019. (Doc. # 27-29). Under these circumstances, the pending Motions to Dismiss should be denied as moot.

### B. Plaintiff has pled legally cognizable causes of action against Defendants.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

11

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Furthermore, the Amended Complaint at issue for which Defendants seek dismissal was prepared by Plaintiff while still representing himself *pro se.* Thus, the Court "must construe his allegations and briefs more permissively." *SEC v. AMX, Int'l*, 7 F.3d 71, 75 (5th Cir. 1993); *see also Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002) ("courts have adopted the rule that a *pro se* plaintiff's pleadings are liberally construed.")

In the present case, it would be illogical, contrary to Rule 8's liberal pleading standard, and contrary to Fifth Circuit precedent to require the *pro se* Plaintiff to have alleged each and every detail regarding his claims at this early stage. Construed liberally, Plaintiff's Complaint, Amended Complaint, and Second Amended Complaint states a host of actionable claims against Defendants and therefore their Motions to Dismiss should be denied.

### C. Should Any Part of Defendants' Motion be Granted, Plaintiff Requests for Leave to Amend

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Courts liberally construe Rule 15(a) in favor of amendment. See Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597 (5th Cir. 1981) ("[T]he liberal position of the federal rules on granting amendments . . . evinces a bias in favor of granting leave to amend").Although leave to amend should not be automatically granted, a "district court must possess a substantial reason to deny a request for leave to amend." Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted). Here, should this Court rule in Defendants' favor on any part of the Motion to Dismiss, Plaintiff respectfully requests leave to amend the pleading. Plaintiff would clarify any allegations this Court finds needs to be clarified, and would add more specific allegations. "[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibility result in dismissal of the complaint with prejudice to re-filing."

*Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). As the *Hart* observed, "[a]lthough a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." This Fifth Circuit precedent applies with even stronger force to the present case given Plaintiff's status as a *pro se* litigant. Accordingly, the Court should allow Plaintiff leave to amend even if it grants Defendants' Motions to Dismiss, in whole or in part.

## Conclusion

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendants' Motions to Dismiss in their entirety.

Dated: June 23, 2019                                    Respectfully Submitted:

**CHRISTOPHER D EUSTICE**

By: S/ Christopher D. Eustice
655 West Forest Dr.
Houston, TX 77079
Telephone: 832.259.1634
Chris.eustice@sbcglobal.net

*Plaintiff Pro Se*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2019, a copy of the foregoing was served electronically via email upon all parties to this case, and through their counsel of record if applicable. I also certify that I have emailed this filing to following non-CM/ECF participants consistent with the parties' agreement for electronic service of documents:

Mr. Ryan Barsa

s/Christopher D. Eustice
Christopher D. Eustice
