UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTOPHER D EUSTICE, | : NO. 3:18-CV-01008-SDD-RLB |
| Plaintiff, | : CHIEF JUDGE SHELLY D. DICK |
| VERSUS | : MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR. |
| STATE OF LOUISIANA THROUGH THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE; MEGAN C. MARTTER; AND RYAN BARSA, | : |
| Defendants. | : |

## AMENDED STATUS REPORT

**A.   JURISDICTION**

The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983; 28 U.S.C. § 1343(a)(1),(2),(3)and(4); 28 U.S.C. § 1331; 28 U.S.C. § 1332; 28 U.S.C. § 1367; 29 U.S.C. § 794 and 42 U.S.C. §§ 12131-12150.

**B.   BRIEF EXPLANATION OF THE CASE**

1.   Plaintiff claims: Mr. Christopher Eustice asserts that he graduated as valedictorian of his high school in 2012 and is an Eagle Scout. Mr. Eustice asserts that he experienced unfair scrutiny at Texas A&M University and transferred to LSU in January 2015. Mr. Eustice asserts that he will ultimately prevail in the ongoing legal battle against Texas A&M, and that LSU has thoroughly reviewed and determined on two separate occasions and with a hearing panel that Mr. Eustice was dismissed from Texas A&M for the unjust reason of receiving a lab report from a fellow student after the due date for the assignment had passed. Mr. Eustice asserts that his problems with LSU were largely a result of

2154293v.2

retaliation due to filing a lawsuit against the close friends of LSU Administrator Matthew Gregory, who at the time was the President and 7 year member of a Texas A&M club for the very same student conduct administrators who the Plaintiff was suing. Dr. Gregory abused unconstitutionally vague student rules and recommended sanctions and a finding of responsibility to his hearing panels openly and in advance of his hearings. Dr. Gregory fabricated evidence and destroyed and covered up evidence that would have exonerated the Plaintiff. Dr. Gregory harassed the Plaintiff by filing 4 meritless cases against the Plaintiff. A few LSU students abused the oppressive speech codes and unconstitutionally vague student rules and initiated proceedings against the Plaintiff for asserting his legal rights when they were violated by those students. Some of those students also bullied or harmed the Plaintiff through other means. The Plaintiff experienced problems with ADA accommodations and experienced first amendment retaliation and ADA retaliation on numerous occasions. The Plaintiff was falsely arrested by the LSU Police who intentionally withheld facts and distorted an affidavit in order to mislead a judge into believing that the Plaintiff was trying to extort sex from a female student named Ms. Megan Martter, when he was actually being very considerate of others and simply asserting his legal rights. The Plaintiff acted reasonably in light of the abuse he was experiencing, did everything he could to deescalate the situation, and yet he became the victim of a warped agenda being promoted by Administrators who openly display their gender bias. This warped agenda was developed in response to outdated Title IX policies previously promulgated by the Department of Education between 2011 and 2016. The exact guidelines that Universities were expected to follow were unclear, leading to panicked overcompliance by some Universities as they renewed their attention to eradicating all possible sexual misconduct.

These outdated policies resulted in some University Administrators being willing to violate legal and constitutional rights of students accused of sexual misconduct in order to keep their federal funding at all costs. These legal violations have resulted in lawsuits all over the nation brought by primarily male victims of gender discrimination. Plaintiff was ultimately suspended for a semester, and LSU has refused to readmit the Plaintiff in retaliation to his filed legal complaints.  Officer Palermo is no longer employed by LSU and, upon Plaintiff's information and belief, was removed from his position for false arresting the Plaintiff.

2.   The LSU Defendants claim: The LSU Defendants deny any and all liability to the Plaintiff, who was suspended from LSU for the Spring 2018 semester after a lengthy series of academic and disciplinary problems that are well-documented in the record.  On each such occasion, the Plaintiff received written notice of the charges against him and was given a full hearing before any consequences were imposed.  The Plaintiff's arrest for cyberstalking (not for sexual misconduct as the Plaintiff alleges) was pursuant to a warrant properly issued by a Judge of the Nineteenth Judicial District Court and based on a proper affidavit of an LSU Police Officer, which affidavit was based on complaints received by the LSU Police Department.  The LSU Defendants deny that they unlawfully discriminated against the Plaintiff on any basis, deny that they unlawfully retaliated against the Plaintiff, deny that they unlawfully refused any requested reasonable accommodations, deny that they denied or violated any of the Plaintiff's constitutional rights, deny that they defamed the Plaintiff, denies that it breached any contractual obligations that might have been owed to the Plaintiff, deny that the Plaintiff was falsely arrested, wrongfully imprisoned, and maliciously prosecuted, deny that the Plaintiff's disciplinary proceedings were marked by

procedural flaws, sex-based bias, and/or selective enforcement, deny that the Plaintiff was subjected to a hostile educational environment, and deny that the Plaintiff was subjected to an erroneous outcome. The Plaintiff's problems at LSU appear to be a continuation of the problems he had at Texas A&M, where he was previously a student and where he was failed in a class after being accused of cheating and was eventually suspended for two years for plagiarism. Defendant Officer Andrew Palermo voluntarily left his employment with LSU on good terms to go to work for the East Baton Rouge Parish Sheriff's Office.

3. Defendant (Ryan Barsa) claims: Mr. Barsa denies any and all liability to the Plaintiff. Mr. Barsa denies all allegations. Mr. Barsa was harassed by Mr. Eustice through electronic means back in 2015. Following the messages sent by Eustice, Mr. Barsa felt threatened and reported him to the LSU Police Department. Mr. Barsa decided to not press charges against Eustice and to allow the LSU Office of Student Advocacy and Accountability handle the issue, hoping that Mr. Eustice would not do this to others in the future. Plaintiff has caused Defendant Barsa and many other LSU students and faculty emotional stress due to his repeated harassment through electronic means.

**C.    PENDING MOTIONS**

1. Defendant LSU's Motion To Dismiss Pursuant To Rule 12(b)(6) (R. Doc. 16). The motion was filed on March 15, 2019. The basis of the motion is the Plaintiff's failure to state a claim in his Complaint and Amended Complaint upon which relief can be granted. In particular, there are legal deficiencies with almost all of the Plaintiff's claims, which deficiencies are obvious from the four corners of the Complaint and Amended Complaint; additionally, almost all of the Plaintiff's claims are prescribed on their face.

- 5 -

2.      Defendant Ryan Barsa filed a Motion To Dismiss Pursuant To Rule 12(b)(6) (R. Doc. 18) on March 22, 2019.  The basis of the motion is the Plaintiff's failure to state a claim in his Complaint and Amended Complaint upon which relief can be granted. Additionally, most if not all of the Plaintiff's claims are prescribed on their face.

3.      Rule 12(b)(6) Motion To Dismiss on behalf of Defendants F. King Alexander, Bart Thompson, and Andrew Palermo (R. Doc. 45).  The motion was filed on May 16, 2019. The basis of the motion is the Plaintiff's failure to state a claim in his Complaint and Amended Complaint upon which relief can be granted.  In particular, there are legal deficiencies with almost all of the Plaintiff's claims, which deficiencies are obvious from the four corners of the Complaint and Amended Complaint; additionally, almost all of the Plaintiff's claims are prescribed on their face.  Officer Palermo is also entitled to qualified immunity.

4.      The LSU Defendants anticipate that LSU employee Jennie Stewart, newly added as a defendant in the Second Amended Complaint, will likely file a Rule 12(b) motion of her own.

5.      The Plaintiff has a few pending motions for extensions of time, request to appear telephonically at the initial conference, and motion for costs of service.

**D.**      **ISSUES**

1.      Plaintiff's legal issues:  (a) Whether any of the Plaintiff's claims are prescribed and whether fraudulent concealment, equitable tolling, and the continuing violation theory is applicable or whether the 10 year prescription period on contract claims is applicable. (b) Whether immunity will prevent Plaintiff from getting his day in court. (c) Whether Plaintiff can recover attorney fees and expenses on legal grounds other than Civil Rights or

- 5 -

2154293v.2

Americans With Disabilities Act Statutes. (d) Whether Defendants should be Sanctioned for Requesting Attorney Fees.

2.	LSU Defendants' legal issues: (a) whether all of the Plaintiff's claims except those directly related to his arrest and suspension are prescribed, (b) whether the continuing-violation theory is applicable in this case, (c) whether LSU is immune from an award of damages under Title II of the ADA, (d) whether the individual LSU defendants are entitled to qualified immunity, (e) whether LSU's policies, procedures, codes, and handbooks create binding contractual obligations, (f) whether the Plaintiff's claims are facially plausible, and (g) whether LSU is entitled to recover its attorney fees and costs in the event it is successful in defending this suit.

3.	Defendant Ryan Barsa's legal issues: (a) whether all of the Plaintiff's claims are prescribed, (b) whether the continuing violation theory is applicable, (c) whether Plaintiff's claims are facially plausible, and (d) whether Mr. Barsa is entitled to recover attorney fees, lost time, wages and costs associated in the event he is successful in defending this suit.

**E.	DAMAGES**

1.	Plaintiff's calculation of damages:

Damage to Reputation from false arrest: Exceeding $1 million dollars

Emotional Trauma from continuous abuse: Exceeding $200,000

Legal Costs and Expenses for Defense of Criminal Case: Approximately $10,000

Legal Costs and Expense for Civil Case: Exceeds $25,000 as of 4/17/2019

Lost Scholarships: Exceeding $10,000

Damage to Grades: Exceeding $100,000

    Lost Wages and Employment Opportunity due to SAA Sanctions: Exceeding $200,000

    Value of Lost Time: Exceeding $200,000

    Value of PETE Degree: To be evaluated down the road as this issue becomes more clear when Plaintiff evaluates his options for degree completion.

  2. LSU Defendants' calculation of offset and/or plaintiff's damages:  The LSU Defendants deny that the Plaintiff has sustained any compensable damages.

  3. Defendant Ryan Barsa's calculation of offset and/or plaintiff's damages:  Mr. Barsa denies that the Plaintiff has sustained any compensable damages.

  4. Counterclaimant/cross-claimant/third-party's calculation of damages: not applicable at this time, as the Defendants have Rule 12 motions that are presently pending and will not be required to file responsive pleadings (which could include counter-claims, cross-claims, and third-party claims) until a later date. Plaintiff denies any liability to defendants and Plaintiff denies that defendants have suffered any compensable damages.

**F. SERVICE**

  1. Plaintiff's statement regarding service on Defendant Megan Martter:  According to R. Doc. 17-2, the Plaintiff attempted to serve co-defendant Megan Martter on March 13, 2019, by leaving a copy of the Summons and Complaint with Ms. Martter's mother, Karen Martter, at 3035 Rosanna Street, Las Vegas, Nevada, 89117. On information and belief, Plaintiff has reason to believe that Ms. Martter maintains her permanent address at 3035 Rosanna Street, yet tends to travel outside of Nevada for Oil & Gas Related employment matters. Plaintiff believes that Megan Martter is well aware of the lawsuit and maintains consistent communications with her mother. Plaintiff recently requested an extension of

- 7 -

- 8 -

time for service on Defendant Megan Martter and recently was emailed an Affidavit of Service on Defendant Megan Martter, which he will soon file with the Court.

2.  LSU Defendants' statement regarding service on Defendant Megan Martter: By Order dated May 28, 2019, the Court gave the Plaintiff sixty (60) additional days to serve Megan Martter. The LSU Defendants are unaware whether Plaintiff has ever served Ms. Martter.

**G.  DISCOVERY**

1.  Initial Disclosures

    A.  The Parties have exchanged Initial Disclosures.

    B.  None of the Parties objects to initial disclosures.

2.  Briefly describe any discovery that has been completed or is in progress:

    By Plaintiff: None

    By Defendants: None

3.  Please describe any protective orders or other limitations on discovery that may be required / sought during the course of discovery.

    A.  By Plaintiff: Plaintiff will seek to discover educational and LSU police records of other students at LSU. Such records are commonly held to be relevant in similar student legal cases and are frequently redacted to remove personally identifiable information by LSU and other universities. This is FERPA Compliant. Any such discovery would be relevant to the Plaintiff's claims and would be proportional to the needs of the case because the Plaintiff believes he has been retaliated against, abused, and unfairly targeted. Plaintiff believes this comparator

evidence should only be restricted by redaction of personally identifiable information or possibly through a protective order.

    B.    By the LSU Defendants: The LSU Defendants anticipate the Plaintiff may seek to discover confidential educational records of other students at LSU. Such records are protected by the Family Educational Rights and Privacy Act ("FERPA"). Furthermore, any such discovery would not be relevant to the Plaintiff's claims, nor would it be proportional to the needs of the case. The Plaintiff's academic and disciplinary problems at LSU are exhaustively documented in his numerous accountability proceedings and hearings, which stand on their own as a complete record of the merit (or lack thereof) of the Plaintiff's claims, and the LSU Defendants will object to any attempt to expand discovery to include the educational records of any students other than the Plaintiff.

4.    Discovery from experts:

    A.    Plaintiff has not yet determined if he will offer any expert testimony. Potential areas for expert testimony include student discipline, the Plaintiff's disability and accommodation thereof, and law enforcement issues. The Plaintiff also reserves the right to retain experts in the same field(s) identified by the Defendants.

    B.    Defendant LSU has not yet determined whether it will offer any expert testimony. Potential areas for expert testimony include student discipline, the Plaintiff's alleged disability and accommodation thereof, and law enforcement issues. LSU also reserves the right to retain experts in the same field(s) identified by the Plaintiff.

    C.    Defendant Ryan Barsa has not yet determined if he will need to offer any expert testimony. Barsa may ask LSU students, faculty and administrators who were witnesses to the events.

**H.    PROPOSED SCHEDULING ORDER**

Initially, the Parties note that it is difficult to propose a scheduling order when there are pending Rule 12 motions and no defendants have yet filed responsive pleadings. Rather than provide specific dates, LSU has proposed a schedule that is keyed to the Court's ruling on the Rule 12 motions. LSU's proposal, set forth below, allows four (4) months for completion of non-expert discovery after the Court has ruled on the pending Rule 12 motions and the Defendants have filed any responsive pleadings.

The Plaintiff does not agree with the proposed scheduling order. Mr. Eustice proposes that the deadline for filing all discovery motions and completing all discovery except experts be no later than August 31, 2020. Eustice suggests that this is an unusually complex case and that discovery may take twice as long as the proposal submitted by LSU.

LSU's proposed schedule is as follows:

1.    If the Parties propose an alternative timeframe for exchanging initial disclosures, please provide that proposed deadline: <u>not applicable</u>.

2.    Recommended deadlines to join other parties or to amend the pleadings: <u>Forty-five (45) days after the Court rules on the Rule 12 motions</u>.

3.    Filing all discovery motions and completing all discovery except experts: <u>One hundred thirty-five (135) days after the Court rules on the Rule 12 motions</u>.

- 10 -

4. Disclosure of identities and resumes of expert witnesses:

   Plaintiff: <u>Seventy-five (75) days after the Court rules on the Rule 12 motions</u>.

   Defendant(s): <u>One hundred five (105) days after the Court rules on the Rule 12 motions</u>.

5. Exchange of expert reports:

   Plaintiff: <u>One hundred thirty-five (135) days after the Court rules on the Rule 12 motions</u>.

   Defendant(s): <u>One hundred sixty-five (165) days after the Court rules on the Rule 12 motions</u>.

6. Completion of discovery from experts: <u>Two hundred ten (210) days after the Court rules on the Rule 12 motions</u>.

7. Filing dispositive motions and Daubert motions: <u>Two hundred fifty-five (255) days after the Court rules on the Rule 12 motions</u>.

8. PLAINTIFF WANTS MORE TIME FOR DISCOVERY.

**I.  TRIAL**

1. A demand for jury trial has been made.

2. The Parties estimate trial will take 1-2 weeks.

**J.  OTHER MATTERS**

Are there any specific problems the parties wish to address at the scheduling conference?

[ X ] YES    [ ] NO

   i. If the answer is yes, please explain:

2154293v.2

LSU asks the Court to Order the Plaintiff to halt all further direct contact with LSU employees and to limit all further correspondence to counsel for LSU.

In response, Mr. Eustice believes he has a few pending issues remaining at LSU and needs to be able to resolve some issues with LSU employees that are unrelated to the lawsuit in question. Eustice believes LSU is trying to run interference and prevent the Plaintiff from resolving these matters, some of which are related to future enrollment and degree completions. Plaintiff has already taken immediate action to reduce his emails being sent to LSU employees and is working with the Defendants. LSU is being really mean, ignoring Plaintiff's emails for course syllabi needed for transfer credits, ignoring emails for other legitimate issues, and is holding his PETE degree hostage.

Also, Mr. Eustice requests a Court Order directing LSU to award his PETE degree and correct LSU's inaccurate records.

Also, the Parties have conferred regarding the pending Rule 12(b) motions as directed by the Court's Order of July 7, 2019, and now inform the Court as follows: (a) the Second Amended Complaint no longer asserts any claims related to the suicide and attempted suicide of the Plaintiff's former roommates, no longer asserts any claims regarding NFL Commissioner Roger Goodell, and no longer alleges that the LSU Police Department stole a bicycle from a police evidence room in Dallas, Texas. Accordingly, the arguments in the Rule 12(b) motions regarding those claims and allegations

are now moot; (b) the LSU Defendants anticipate that LSU employee Ms. Jennie Stewart, who was just added as a new defendant via the Second Amended Complaint, will likely file a Rule 12(b) motion of her own; (c) the LSU Defendants believe the pending motions should be refiled to address specifically the allegations in the Second Amended Complaint, which will also have the benefit of consolidating all of the arguments currently spread across multiple motions and numerous supporting briefs into a single pleading; and (d) Plaintiff disagrees that all the numerous Motions and responses need to be refiled, because the two Amended complaints only varied slightly from the Original Complaint. Plaintiff believes that LSU is using this as an opportunity to correct their legally deficient arguments.

ii.     If the answer is no, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in this report? **CHECK "NO" IF YOU HAVE NOT SUBMITTED JOINT PROPOSED DEADLINES?**

[  ] YES     [ X ] NO

**K.   SETTLEMENT**

1.   Please set forth what efforts, if any, the parties have made to settle this case to date: The Plaintiff made separate settlement offers to LSU and to Mr. Barsa in February 2019.  The Plaintiff believes the settlement offers were reasonable.  LSU responded that it was not interested in settling at the present time.  Mr. Barsa denied the offer.

    2.       Do the parties wish to have a settlement conference:

The Plaintiff <u>would</u> like to have a settlement conference after the Rule 12 Motions are decided and possibly before Discovery begins. Plaintiff believes this is best for all parties involved.

LSU is <u>not</u> interested in having a settlement conference at the present time.

Mr. Barsa is <u>not</u> interested in having a settlement conference at the present time.

**L.**     **CONSENT TO JURIDICTION BY A MAGISTRATE JUDGE**

All parties agree to jurisdiction by a Magistrate Judge of this court:

                  [   ] YES     [ X ] NO

Respectfully submitted,

<u>s/Christopher D. Eustice</u>
Plaintiff Pro Se
655 West Forest Drive
Houston, Texas 77079
Telephone: (832) 259-1634


<u>s/Ryan S. Barsa</u>
Defendant Pro Se
20 Conifer Drive
Mendham, New Jersey 07945
Telephone: (973) 294-9988


<u>s/John P. Murrill</u>
TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.
John P. Murrill, T.A., Bar # 23878
Lauren R. Hadden, Bar # 36648
450 Laurel Street, 8th Floor (70801)
P.O. Box 2471
Baton Rouge, LA 70821-2471
Telephone: (225) 387-3221
Fax: (225) 346-8049
*Attorneys for the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, F. King Alexander, Bart Thompson, and Andrew Palermo*

- 14 -

## CERTIFICATE

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. I also certify that I have mailed by United States Postal Service this filing to the following non-CM/ECF participants:

| | |
|---|---|
| Mr. Christopher D Eustice | Mr. Ryan Barsa |
| Plaintiff Pro Se | Pro Se Defendant |
| 655 West Forest Drive | 20 Conifer Drive |
| Houston, Texas 77079 | Mendham, New Jersey 07945 |

Baton Rouge, Louisiana, this 25th day of July, 2019.

                                                        s/John P. Murrill
                                                        John P. Murrill

2154293v.2