UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHRISTOPHER D. EUSTICE                                    CIVIL ACTION

VERSUS

                                                          NO. 18-1008-SDD-RLB

STATE OF LOUISIANA THROUGH
THE BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE,
ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on June 29, 2020.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CHRISTOPHER D. EUSTICE                                CIVIL ACTION

VERSUS

                                                      NO. 18-1008-SDD-RLB

STATE OF LOUISIANA THROUGH
THE BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE,
ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court Board of Supervisors of Louisiana State University and Agricultural and

Mechanical College ("LSU"), F. King Alexander, Bart Thompson, Andrew Palermo, and Jennie

Stewart's (collectively, the "LSU Defendants") Motion for Sanctions. (R. Doc. 145).  The

motion is opposed. (R. Doc. 150).

## I.      Background

A brief review of the underlying behavior of Christopher D. Eustice ("Plaintiff") while a

student at Louisiana State University ("LSU") is relevant to provide context for the sanctions

sought through instant motion.  The following events are taken from Plaintiff's Second Amended

Complaint (R. Doc. 79, "Second Am. Compl.").

In January 2015, Plaintiff transferred from Texas A&M University to LSU in Baton

Rouge, Louisiana. (*Id*. ¶ 15).  Before transferring to LSU, Plaintiff was suspended for two years

from Texas A&M University for plagiarism.  Plaintiff filed a federal lawsuit against Texas A&M

University and its president and those claims were dismissed with prejudice. *See Eustice v. Texas*

*A&M University*, No. 15-3180, 2016 WL 8710444 (S.D. Tex. Sept. 30, 2016).

After his transfer to LSU, Plaintiff was charged with five violations of the Code of

Student Conduct by the LSU Office of Student Advocacy (the "SAA").  The first and second

charges involved the defendant Ryan Barsa,[1] resulting in Plaintiff being placed on disciplinary

probation with restrictions. (Second Am. Compl. ¶¶ 23-39).  The third charge involved

allegations of cheating on exams and classwork, resulting in reduced grades for Plaintiff. (*Id*. ¶¶

40-43).  The fourth charge, which was dropped on appeal with the University Hearing Panel, was

for providing false information to LSU with respect to his full conduct record from Texas A&M

University. (*Id*. ¶¶ 46-49).

The fifth and final charge brought against Plaintiff involves defendant Megan Martter, an

LSU undergraduate student at the time of the charge. (*Id*. ¶ 57-68).  Among other things, Plaintiff

sent various unsolicited text messages to Ms. Martter suggesting that he wanted a strictly

physical relationship with her despite a clear response that she was uninterested. (*Id*., Exhibit C).

Ms. Martter eventually complained of Plaintiff's communications to the LSU Police Department.

(*Id*. ¶ 69).  The LSU Police arrested Plaintiff for cyberstalking on November 9, 2017. (*Id*. ¶ 83).

Plaintiff was then charged by the SAA with respect to this stalking complaint and, after an

appeal with the University Hearing Panel, Plaintiff was suspended, and his appeals were denied.

(*Id*. ¶¶ 88-101).

On November 8, 2018, Plaintiff commenced this action, alleging various federal and state

claims, including violation of his due process rights under the Fourteenth Amendment of the

U.S. Constitution, violations of discrimination laws including the Rehabilitation Act of 1973, 29

U.S.C. § 794, the Americans With Disabilities Act, 42 U.S.C. §§ 12131-12150, and Title IX, 20

U.S.C. § 16181, damage to his reputation, false arrest, and breach of contract. (R. Doc. 1; *see* R.

---

[1] On January 21, 2020, Plaintiff's claims against Mr. Barsa were dismissed with prejudice. (R. Doc. 116).

Docs. 20, 79).  Plaintiff brought claims against the LSU Defendants, Mr. Barsa, and Ms. Martter. (R. Doc. 79 at 1-3).

On August 8, 2019, the Court held a telephone status conference with Plaintiff and defense counsel. (R. Doc. 88).  To halt Plaintiff's direct communication with LSU faculty members and administrators, the Court provided that it was reasonable to require "any contact between Plaintiff and LSU be done through defense counsel." (R. Doc. 88 at 3).  The Court further provided that "should Plaintiff need any additional information from the school, that request shall be made in writing to defense counsel. Defense counsel shall make reasonable efforts to address those requests with his client and facilitate the transfer of any records or documents as appropriate." (R. Doc. 88 at 3).  As made clear below, Plaintiff has used the foregoing instructions, which were meant to protect LSU faculty members and administrators, as justification for inundating defense counsel with harassing e-mail communications.

Plaintiff's continued inappropriate behavior was made clear in the context of Plaintiff's requests for extensions to oppose certain motions to dismiss.  The Court granted Plaintiff an extension of the deadline to oppose the motions. (R. Doc. 103).  When Plaintiff sought an additional extension, the LSU Defendants alerted the Court to Plaintiff's inappropriate behavior during the original extension and throughout this litigation.  In light of this information, on January 14, 2020, the Court issued a ruling denying Plaintiff's request for an additional extension. (R. Doc. 115).

In its ruling, the Court noted that the LSU Defendants provided evidence that Plaintiff has filed numerous lawsuits during the time in which the Court provided Plaintiff the opportunity to oppose the motion to dismiss:

> [H]e has a lengthy history of filing numerous lawsuits and, as evidenced by the documents he attached to his Complaints, he even bragged to Ms. Martter about his prowess as a plaintiff. A review of online records indicates that in the last year alone he has filed the following suits: *Eustice v. Baker Hughes*, no. 2019-2595 (S.D. Tex.); *Eustice v. Cameron Int'l Corp.*, no. 2019-2382 (S.D. Tex.); *Eustice v. Discovery Financial Svcs., Inc.*, no. 2019-1488 (S.D. Tex.); *Eustice v. Equifax, Inc.*, no. 2019-2247 (S.D. Tex.); *Eustice v. Halliburton Energy Svcs., Inc.*, no. 2019-2596 (S.D. Tex.); *Eustice v. JPMorgan Chase*, no. 2019-1489 (S.D. Tex.); *Eustice v. Newfield Exploration Co.*, no. 2018-3669 (S.D. Tex.); *Eustice v. Shell Oil Co.,* no. 2019-2594 (S.D. Tex.); *Eustice v. Gorman Law Firm*, no. 2019-55192 (Harris Cty., Tex.); *Eustice v. Shell Oil Co.*, no. 2019-79318 (Harris Cty., Tex.); *Eustice v. Halliburton Energy Svcs., Inc.*, no. 2019-79952 (Harris Cty., Tex.); and *Eustice v. Baker Hughes*, no. 2019-79967 (Harris Cty., Tex.). Several of these lawsuits were even filed after this Court granted him his first extension of time to oppose the LSU Defendants' motion to dismiss. In other words, after telling this Court he needed more time to oppose the motion to dismiss, he used the additional time granted to him by the Court to file more lawsuits in other courts [].

(R. Doc. 115 at 2 (citing R. Doc. 106 at 2-3)).   Plaintiff's litigiousness is a major theme in the

correspondence at issue in this motion.

In denying Plaintiff's request for an additional extension, the Court further acknowledged

that the LSU Defendants had "presented evidence demonstrating that Plaintiff has engaged in

habitual harassment of LSU's representatives and counsel during his sixty day extension." (R.

Doc. 115 at 2).   The Court went on to observe: "The sixty-six pages of email communications

sent from Plaintiff to counsel for LSU and LSU representatives reveal extremely inappropriate

and utterly reprehensible conduct by a party proceeding as his own attorney in federal court.

Plaintiff's communications in many instances are sexually explicit, contain veiled threats, and

demonstrate repugnant behavior that is beneath the dignity of this Court." (R. Doc. 115 at 2-3).

Plaintiff's inappropriate correspondence was filed in the record under seal as Exhibits A-

E to the LSU Defendants' opposition brief. (R. Doc. 110).   The LSU Defendants aptly

summarize the irrelevant, unsolicited, and harassing correspondence from Plaintiff as follows:

- "During the period October 8-26, 2019, [Plaintiff] sent a series of e-mails to counsel for the defendants in which he discussed the size of his genitalia, claimed he had been sexually harassed about the size of his genitalia after his arrest, and forwarded links to multiple articles about the size of male genitalia. Exhibit A."

- "On September 6, 2019, [Plaintiff] e-mailed the attorneys representing the LSU Defendants a link to a story about a man having sex with pool noodles. Exhibit B. On another occasion (dating back to the period of time before he was represented by counsel), he e-mailed a link to a story about a man who pressured a town into repairing its pot holes by spray-painting male genitalia on the pot holes."

- "On September 5, 2019, [Plaintiff] used e-mail to forward to the attorneys representing the LSU Defendants a lengthy and sexually-graphic text message exchange he had with a friend of his. The text-message exchange is mostly a series of texts from Mr. Eustice with very little response from his friend, who did comment at one point that 'you're a weird f**king dude.' Exhibit C."

- "During the month of August 2019, [Plaintiff] sent the attorneys for the LSU Defendants a series of bizarre e-mails with photographs of persons in hospital beds suffering from ailments associated with vaping. Exhibit D."

- "[Plaintiff] periodically sends e-mails with screen-prints and information he obtained from the Facebook pages of the defense attorneys (all while ironically insisting he is innocent of cyberstalking). Exhibit E."

- "[Plaintiff] routinely sends e-mails about the National Football League and the performance of his favorite teams. He also routinely sends e-mails with photographs of President Trump, Supreme Court Justice Brett Kavanaugh, Arnold Schwarzenegger, and other politicians and celebrities."

(R. Doc. 106 at 5-6). Warning Plaintiff that such behavior could result in sanctions, the Court informed Plaintiff that "Plaintiff's communications with the Defendants and their counsel fall far short of the expectations of the Rules of Professional Conduct and general common courtesy." (R. Doc. 115 at 4). An additional motion by Plaintiff seeking extensions was denied for the same reasons. (R. Doc. 124).

The instant motion for sanctions makes it clear that the Court's prior orders had no effect on curbing Plaintiff's inappropriate correspondence with the defendants and their counsel. If anything, Plaintiff's correspondence has become more disturbing. Plaintiff's emails, which are

often sent in the late evening or early morning, do not merit any response and appear to serve no

other purpose than to harass the recipients and clog their e-mail inboxes with irrelevant

information.  The LSU Defendants attached five e-mail threads to their motion sent to John

Murrill (counsel for the LSU Defendants), Lauren Rivera Hadden (counsel for the LSU

Defendants), Andrew Eversberg (counsel for Megan Martter), and/or Mr. Barsa (*pro se*

defendant). (*See* R. Doc. 145-1 through R. Doc. 145-5) ( Exhibit A, "Frivolous Pleadings";

Exhibit B, "Request for Case to be Opened"; Exhibit C, "Eustice v. LSU"; Exhibit D, "Impact

Guns"; Exhibit E, "Get Sued").

Several of Plaintiff's emails inappropriately highlight his attraction to Ms. Martter and

Ms. Hadden through discussions of their physical appearances and his own physique:

- February 21, 2020, at 12:52 a.m. – "As many of you are aware, John Murrill has made a habit of being dishonest in his frivolous pleadings.  Among his extremely absurd claims is that I was obsessed with Megan Martter.  I would hope my lack of serious interest in her would be clear from my texts and emails.  Megan is cute, but I am far from obsessed with her." (R. Doc. 145-1 at 17).

- February 22, 2020, at 10:03 pm – "I'm also 6 feet 3 in. tall while Megan is around 5 feet tall. It's a pretty big height difference. It's not easy to make that work. I am into taller women as I am a rather large individual and being a semi professional bodybuilder means that I am also more well suited with taller women because I can still easily lift a woman who is taller than I am. There is this 6 foot 5 inch tall Polish girl who always works out at my gym and I think I should ask her out on a date but I don't really know her." (R. Doc. 145-1 at 17).

- February 22, 2020, at 10:41 pm – I also want to mention that I prefer women who have lighter colored eyes. I have blue eyes. I really prefer women with blue eyes. Megan has brown eyes. But there are still some women out there with brown eyes who are very attractive to me. Allison Brassette is very attractive and significantly taller than Megan Martter. I can send you over a years [sic] worth of text messages that can prove Allison was my girlfriend from Fall 2017 to January 2019. Why would I be obsessed with Megan Martter as you falsely allege? Lauren Hadden is also a very attractive example of a tall woman with brown eyes. She kept glancing over at me in court and I think she was checking me out, but I'm not sure." (R. Doc. 145-1 at 16-17).

- February 24, 2020, at 11:37 p.m. – "Lauren Hadden is probably one of the most attractive women I have ever met. Absolutely beautiful!" (R. Doc. 145-1 at 16).

- February 27, 2020, at 11:09 p.m. – "Lauren is gorgeous." (R. Doc. 145-2 at 1).

- March 3, 2020, at 3:16 a.m.  – "When Lauren was checking me out in court I was around 192 lbs. I had leaned out and dropped some weight. Sometimes all the extra muscle mass can be unhealthy. I am back at a lean 200 lbs now. My phone number hasn't changed." (R. Doc. 145-1 at 16).

- March 3, 2020, at 10:55 p.m. – "I don't want to seem crude. I just have strong feelings for Lauren. She seems like a very pleasant person. I am not trying to make anyone uncomfortable. I am also a good looking guy and I thought Lauren might also have feelings for me as well. Does anyone have any updates on the theft insurance for my stolen beers?" (R. Doc. 145-1 at 15-16).

- March 4, 2020, at 3:06 a.m. – "I genuinely care about Lauren and her wellbeing. Maybe more than you [Mr. Murrill]. I think it's appropriate to at least mention my feelings to see if she feels the same way about me. I generally know when women are attracted to me." (R. Doc. 145-1 at 14).

- March 19, 2020, at 11:59 p.m. – "I hope I didn't hurt anyone's feelings. I still think Megan is cute. Lauren is also very attractive." (R. Doc. 145-1 at 10).

- March 25, 2020, at 5:26 p.m. – "I also wanted to follow up with Lauren Hadden. I would like to get to know you on a personal level." (R. Doc. 145-1 at 9).

In his opposition, Plaintiff does not address his inappropriate comments with respect to Ms. Martter.  He does, however, attempt to dismiss his inappropriate emails regarding Ms. Hadden as harmless flirtation:

> The fact of the matter is that Lauren Hadden spent a lot of her time glancing over at the Plaintiff at the October 2019 criminal trial which went in Plaintiffs favor. At one point while sitting outside in the hallway, she stared at Plaintiff with an affectionate look for a period of several minutes. Plaintiff genuinely believes there may be a feeling of mutual attraction here. Plaintiff's Communications on their face consist of innocent compliments and completely clean and appropriate communications.  Most women would be flattered to be described as "beautiful" or "gorgeous." Not once has Lauren Madden ever suggested that the comments made her uncomfortable or asked the Plaintiff to adjust his behavior. Plaintiff never crossed the line into talking about her body parts or made any comments of a sexual nature. Most people would be thankful to have received such a generous complement from the Plaintiff.  Plaintiff also already stopped sending messages over 2 months ago.  What is the big deal here?  No harm and no foul.

(R. Doc. 150 at 2).  Plaintiff does not grasp the inappropriateness of commenting on opposing

counsel's physical appearance and confessing "strong feelings" for her in the context of a group

e-mail sent to her colleagues in this litigation.  There is no evidence that Ms. Hadden encouraged

these inappropriate emails which were sent over a course of a month.

Some of Plaintiff's correspondence highlights his proclivity for litigiousness and

threatening behavior.[2]  Many of these emails demonstrate Plaintiff's agitation with respect to the

lack of responses to his correspondence and threats of frivolous lawsuits.  They culminate in

Plaintiff obtaining Mr. Murrill's home number through online research, calling that number, and

speaking to opposing counsel's wife about his e-mail correspondence.

- January 31, 2020, at 10:51 a.m. – "I can sue you and/or LSU in other lawsuits if needed." (R. Doc. 145-3 at 1).

- January 31, 2020, at 9:57 p.m. – "I need updates. I don't stop. I will vacate judgements and file parallel lawsuits. Trump 2020." (R. Doc. 145-4 at 1).

- March 8, 2020, at 11:32 p.m. – "I have no problem filing a $10,000 small claims lawsuit. I file them all the time and have a lot of experience in that area. I represent my family members in various cases and I represent myself.[3] I also get to file lawsuit there for free without paying the filing fee. I really like our Judge here. Stop wasting my time and stop ignoring me. I am a skilled litigant and I won't take no for an answer." (R. Doc. 145-4 at 1).

- March 31, 2020, at 12:06 p.m. – "Please stop ignoring my emails and please stop being a terrible person." (R. Doc. 145-1 at 7).

- March 31, 2020, at 8:48 p.m. – "Respond now please. Stop ignoring my reasonable requests. You little man. How dare you defy me. Who do you think you are?" (R. Doc. 145-1 at 7).

- April 17, 2020, at 10:50 p.m. – "I am also considering taking civil action against you. I would hope you knew enough about me to take my threats of civil action

---

[2] Plaintiff's pre-lawsuit correspondence with Ms. Martter acknowledges his reputation for litigiousness:  "I'm known for being litigious." (Second Am. Compl. Ex. C).  Plaintiff's application to proceed *in forma pauperis* notes that Plaintiff's "other streams of income" includes "litigation settlements which are confidential." (R. Doc. 2 at 1).
[3] Plaintiff may be practicing law in other jurisdictions without a license.

seriously. I will never give up until I am adequately compensated for what is owed to me." (R. Doc. 145-1 at 6).

- May 6, 2020, at 1:18 a.m. – "John [Murrill] start responding to my emails. If things don't work out in my case I'm going to keep filing hundreds of breach of contract cases against individual LSU employees over the next 10 years. I will bankrupt LSU and bury the University in financial ruin. Do not mess with me." (R. Doc. 145-1 at 4).

- May 6, 2020, at 1:32 a.m. – "I'm going to really make you regret mistreating me." (R. Doc. 145-1 at 4).

- May 6, 2020, at 5:38 p.m – "You are pushing me. Don't make me sue you." (R. Doc. 145-1 at 4).

- May 6, 2020, at 8:54 p.m. – "If you keep it up I will sue you until I own everything you have." (R. Doc. 145-1 at 4).

- May 9, 2020, at 3:26 a.m. – "[D]o you love Adele? You were wearing a shirt that said 'I love Adele.'" (R. Doc. 145-1 at 4).[4]

- May 10, 2020, at 1:34 a.m. – "See I have a lot in common with you John [Murrill]. Maybe you shouldn't be such a dick." (R. Doc. 145-1 at 3).

- May 15, 2020, at 11:50 p.m. – "My pending issues include several incredibly urgent matters. You have ignored my emails and calls to your office number for months and weeks on end. I will not tolerate this any further. I will make a good faith effort to call you at your home address to make sure you are not simply under quarantine. I will then demand sanctions against you." (R. Doc. 145-1 at 2).

- May 16, 2020 – Plaintiff called Mr. Murrill's residence and spoke to his wife about not receiving responses to his e-mail correspondence. Mr. Murrill requested Plaintiff to never call his house again. (*See* R. Doc. 145-6 at 9; R. Doc. 145-1 at 1).

- May 17, 2020, at 7:58pm – "[Y]our behavior and lack of response is highly inappropriate. Do you think you can treat people this way and get away with it?" (R. Doc. 145-1 at 1).

- May 18, 2020, at 10:27 p.m. – "I will sue you until I own everything you have. I will never stop pursuing you with lawsuits." Attached to the email included various memes and photographs involving President Trump and lawsuits. (R. Doc. 145-1 at 1).

---

[4] This appears to be a reference to a photograph on Mr. Murrill's Facebook page.

Plaintiff has also sent several emails that sometimes reinforce his implicit threats to defense

counsel by demonstrating his physique and bodybuilding regimen, his feelings toward women,

his ownership of weapons.  Plaintiff has also inundated defense counsel with requests to jointly

engage in various lawsuits completely unrelated to the instant lawsuit.

- March 13, 2020, at 1:14 a.m. – "I dropped a 400 lb weight on my toe.  Do I have a valid product liability claim against Nike for their $250 weightlifting shoes?" Plaintiff attached pictures.  (R. Doc. 145-1 at 14).[5]

- March 15, 2020, at 2:23 a.m. – "Also a friend conveniently snapped a photo to prove I was wearing the protective weightlifting shoes when the injury occurred. I was actually being safe and doing 20 reps on trap bar deadlift. Not even lifting that heavy. Can you help me with my legal matter?"  Plaintiff attached a pictures. (R. Doc. 145-1 at 14).

- March 17, 2020, at 12:25 a.m. – "In this photo I had just played a game or two of basketball, drank a bunch of water, and I had just done one warm up set of barbell lunges. Barbell lunges are great for the legs. I do 16-20 reps of lunges with 225 lbs on my back. Anyways, for some odd reason I get really bloated and look less lean after cardio. It might be a result of water retention. I also didn't have a good pump of blood into my muscles in this photo because I only did one warm up set. I'm also at the fattest part of the day right when I start a workout. I thus look less lean and less muscular in this photo. My friend also says my legs look small in this photo. I think this might be an optical illusion because of the way my knees are angled/bent, my shorts are somewhat long, and the trajectory of my feet. I personally think my calves look kind of small but all the calf raise machines only go up to 400 lbs and I do high reps like 40 reps. Maybe I should try to do free weight calf raises and get into a good bodybuilding hypertrophy rep range of 6-12 or 6-20 reps. Thoughts? Also I sometimes wonder if I work out my core muscles too much. It's nice to have visible and strong abs/core muscles but it can also make your gut appear to stick out when you have a shirt on. I can do 30 windshield wipers and 30 straight leg to chest raises while hanging from a pull up bar. Very few people can do that. I'm always looking for words of wisdom from my fellow athletes. I look forward to hearing back from everyone. I think Lauren is a rather athletic person. John Murrill is a great outdoorsman and a great hunter. Ryan and Drew are also very talented individuals." (R. Doc. 145-1 at 13).

- March 20, 2020, at 2:22 a.m. – I also have more circumstantial evidence to prove that I was sexually harassed about my genitalia. I'm sure that Megan Martter and her mother will confirm these events. The guy who sent them unsolicited Dick pics also sent them to me. I cannot condone this sexual harassment. I am very

---

[5] In his opposition, Plaintiff explains this email as follows: "The toe picture was for a legitimate legal matter and a product liability claim related to protective weightlifting shoes." (R. Doc. 150 at 3).

respectful towards and considerate of women. I have never sent Dick pics to a woman before. Personally I feel like I have a duty to protect and take care of women. This sort of behavior is disgusting." Plaintiff attached pictures. (R. Doc. 145-1 at 10).[6]

- March 21, 2020, at 3:32 p.m. – "My parents lost over 7 figures in the stock market in the past few weeks. I am looking for attorneys to help file suit against [1] Wuhan China or others for causing the spread of COVID-19 [2] Saudi Arabia for tanking oil prices and causing the price of Exxon stock to drop. I think we could turn this into a class action." (R. Doc. 145-1 at 9).

- March 21, 2020, at 9:01 p.m. – "$20 Trillion dollar lawsuit * 10% chance of success = $2 Trillion Dollar Business Opportunity China owes me a lot of money and I will make them pay. Please help me in my quest for Justice." (R. Doc. 145-1 at 9).

- March 23, 2020, at 9:57 p.m. – "I'm also selling a few firearms. Let me know if you're interested." (R. Doc. 145-1 at 9).

While the foregoing emails may be merely annoying in the context of communications within Plaintiff's own social circle, they constitute harassment in the context of communications to opposing counsel.

In light of the foregoing, the LSU Defendants filed the instant motion for sanctions, which seeks sanctions up to and including dismissal of Plaintiff's claims with prejudice. As discussed below, the dismissal of Plaintiff's claims with prejudice is an appropriate sanction given the foregoing behavior.

## II.    Law and Analysis

The Court acknowledges that "*pro se* pleadings are held to less stringent standards than pleadings drafted by lawyers," and "*pro se* pleadings must be treated liberally." *U.S. v. Robinson*, 78 F.3d 172, 174 (5th Cir. 1996); *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th

---

[6] The LSU Defendants explain that the attachments were screen shots of a 2018 text message between Plaintiff and another person in which he related that a friend of his had been sending "unsolicited pictures of his junk" to Ms. Martter. (R. Doc. 145-6 at 10). In opposition, Plaintiff represents that he did not send any "Dick pics." (R. Doc. 150 at 4).

Cir. 2004).  Nevertheless, "a *pro se* litigant is not 'exempt . . . from compliance with the relevant

rules of procedural and substantive law.' *NCO Financial Systems, Inc. v. Harper–Horsley*,

No.07–4247, 2008 WL 2277843 at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d

592, 593 (5th Cir. 1981)).  A *pro se* litigant is not entitled to greater rights than would be a

litigant represented by a lawyer." *Id*. (citing *Birl*, 660 F.2d at 593).  "[Plaintiff's] *pro se* status

does not offer him an impenetrable shield, for one acting *pro se* has no license to harass others,

clog the judicial machinery with meritless litigation and abuse already overloaded court

dockets." *Wells v. DiVicenti*, No. 12-731, 2014 WL 1118113, at *3 (M.D. La. Mar. 20, 2014).

Accordingly, while Plaintiff's pleadings are to be construed liberally, Plaintiff, acting as

his own lawyer, must maintain the professionalism, courtesy, and dignity required of any

member of the Middle District Bar.  Local Rule 83(b)(6) provides: "This Court hereby adopts the

Rules of Professional Conduct of the Louisiana State Bar Association, as hereafter may be

amended from time to time by the Louisiana Supreme Court, except as otherwise provided by a

specific rule or general order of a court."  Local Rule 83(b)(10) requires that even pro se litigants

be familiar and comply with these rules: "Everyone who appears in Court in proper person and

every attorney permitted to practice in this Court shall be familiar with these Rules. Willful

failure to comply with any of them, or a false certificate of compliance, shall be cause for such

disciplinary action as the Court may see fit, after notice and hearing."  Plaintiff was informed of

these rules in the Court's January 14, 2020 Order.(R. Doc. 115 at 3).

The LSU Defendants seek dismissal as a sanction under Rule 41(b) of the Federal Rules

of Civil Procedure on the ground that Plaintiff has failed to comply with the Court's January 14,

2020 Order.  Rule 41(b) states that "if the plaintiff fails to prosecute or to comply with these

rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed.

R. Civ. P. 41(b).

In addition, the LSU Defendants seek dismissal in light of the Court's authority under its

inherent power to reach misconduct that might otherwise be beyond the reach of the Federal

Rules and Local Rules. *See Clark v. Mortenson*, 93 Fed. App'x 643 (5th Cir. 2004).  Courts

possess the inherent power "to protect the efficient and orderly administration of justice and . . .

to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*,

986 F.2d 898, 902 (5th Cir. 1993).  Included in this inherent power is "the power to levy

sanctions in response to abusive litigation practices." *Id.*  "When a party's deplorable conduct is

not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district

court to rely on its inherent power to impose sanctions." *Carroll v. Jaques Admiralty Law Firm,*

*P.C.*, 110 F.3d 290, 292-93 (5th Cir. 1997) (citations omitted).  "Because of their very potency,

inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501

U.S. 32, 50 (1991).  Nevertheless, "[t]he threshold for the use of inherent power sanctions is

high." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995).  A court's inherent power

is not "a broad reservoir of power, ready at the imperial hand, but a limited source; an implied

power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu Television*

*& Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990), *aff'd sub nom. Chambers v. NASCO, Inc.*, 501

U.S. 32 (1991).

Whether through Rule 41(b) or the Court's inherent powers, the LSU Defendants seek

dismissal of this action in its entirety with prejudice.  The U.S. Court of Appeals for the Fifth

Circuit has characterized an involuntary dismissal with prejudice as "the ultimate sanction," and

instructed that it should only be used in the "most egregious," "most flagrant," and "extreme"

circumstances. *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513, 1519 (5th Cir. 1985);

*Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1214 (5th Cir. 1980); *Boazman v. Econ.*

*Lab., Inc*., 537 F.2d 210, 212 (5th Cir.1 976). A dismissal with prejudice should only be granted

(1) "upon a 'clear record of delay or contumacious conduct by the plaintiff'" and (2) when the

best interests of justice would not be served by lesser sanctions. *Callip*, 757 F.2d at 1519. In

addition to, at least one aggravating factor should be present including: (1) delay directly

attributable to the plaintiff, instead of the plaintiff's attorney, (2) "actual prejudice to the

defendant," and (3) "delay caused by intentional conduct." *Id*.

      Accordingly, in determining whether dismissal with prejudice is appropriate, the Court

must first determine whether the record in this case demonstrates that Plaintiff has clearly

exhibited contumacious conduct or a pattern of delay. The Fifth Circuit has stated that

"contumacious conduct" is "not a party's negligence—regardless of how careless, inconsiderate,

or understandably exasperating—that makes conduct contumacious; instead, it is 'the stubborn

resistance to authority' which justifies a dismissal with prejudice." *McNeal v. Papasan*, 842 F.2d

787, 792 (5th Cir.1988) (quoting *John v. Louisiana*, 828 F.2d 1129, 1131-32 (5th Cir.1987)).

      Having considered the record, the Court finds that Plaintiff clearly exhibited

contumacious conduct despite the Court's order to refrain from doing so. Plaintiff acknowledges

that the Court's order warned him "to avoid crude behavior" in the context of litigating this

action. (R. Doc. 150 at 5). Plaintiff's conduct constitutes willful failure to comply with the

Court's explicit order to refrain from such behavior. Plaintiff clearly intended to threaten the

recipients of the e-mails to overburden defense counsel with irrelevant, inappropriate and

offensive information. The voluminous correspondence – which the Court has only touched

upon – evidence Plaintiff's stubborn resistance to the Court's authority and warnings to cease

with such behavior.  Plaintiff's correspondence and the lack of any apology in his opposition

speak volumes.

      Given Plaintiff's complete disregard for this Court's orders and common human decency,

the best interests of justice would not be served by lesser sanctions.  As discussed below, the

Court finds it appropriate to enjoin Plaintiff from filing any additional lawsuits in this district

without prior approval from a judicial officer.  Plaintiff has inundated defense counsel and a *pro*

*se* defendant with e-mails unrelated to the instant litigation.  Many of the emails include

offensive, vulgar, and mocking statements and materials directed at the defendants and their

counsel.  The emails include personal threats and inappropriate expressions of amorous feelings

for a defendant who brought charges for cyberstalking against him and opposing counsel, who

has graciously remained silent in spite of Plaintiff's catcalls.  Plaintiff has commented on defense

counsel's personal lives and physical appearances for the purposes of intimidation.  Plaintiff has

sent scores of emails concerning personal issues that are completely irrelevant to the adjudication

of the instant action.  Plaintiff has contacted one attorney's personal residence and spouse.

Plaintiff's intentional conduct falls far short of what is required to uphold the dignity of this

court.

      Based on the foregoing, dismissal of this action with prejudice is appropriate under Rule

41(b) and/or this Court's inherent power.  To the extent any notice is required, this Report and

Recommendation constitutes notice of the Court's consideration of such action.

      The Fifth Circuit has upheld the dismissal of an action with prejudice where the Plaintiff

engaged in similar behavior:

> We have carefully reviewed the record and the party submissions in the instant
> case, and we find no error in the judgment of the court below. Petito's conduct is
> inexcusable. He used vulgar and abusive language to refer to judicial officers, and
> he sent threatening e-mails to opposing counsel. Under these circumstances, the

dismissal of his case, even despite his unsubstantiated pleas of financial hardship and inability to appear at multiple show cause hearings, is by no means an abuse of discretion. He cannot expect the protection of the very courts he abuses; nor should he expect his action to proceed after debasing judicial proceedings with vulgar insults, or, more worryingly, issuing threats to opposing counsel, conduct that may be criminal.

The right to bring claims before the courts is a sacred right in our republic. But this right is not without limits. We are vested with the power, and we labor under the duty, to protect judicial officers as well as those appearing in court on their own behalf and on behalf of others. Such protection was required in this case due to Mr. Petito's wrongful conduct, and accordingly, his claims against the defendants, whether meritorious or not, have been forfeited. The dismissal with prejudice was appropriate and the sanctions against Mr. Petito were imposed according to law.

*Petito v. Brewster*, 562 F.3d 761, 763 (5th Cir. 2009); *see also Leibovitz v. City of New York*, No. 15-546, 2019 WL 4307305, at *1 (S.D.N.Y. Aug. 27, 2019) ("Although a pro se plaintiff is entitled to some latitude generally, he is not entitled to any latitude when it comes to threatening and inappropriate conduct. His unfamiliarity with the legal process is no excuse for threatening physical force, disparaging counsel, using profanity"); *Colida v. Panasonic Corp. of N. Am.*, 09-1786, 2011 WL 1743383, at *7 (N.D. Ill. May 3, 2011) ("Mr. Colida's vile statements, even if made in a paroxysm of anger, are reflective of an attempt on his part to abuse the legal process via his prosecution of this lawsuit. He does not get a free pass simply because he is a *pro se* litigant or simply because his statements to Panasonic's lawyers were not made in filings with the court").

In addition to the sanction of dismissal with prejudice, the LSU Defendants ask the Court (1) to exercise its inherent power and/or its authority under 28 U.S.C. 1927 to sanction Mr. Eustice by ordering him to reimburse the attorney fees and costs they have expended defending against this frivolous lawsuit and his sanctionable conduct and (2) to enjoin Plaintiff from filing further *pro se* lawsuits without first obtaining the Court's advance approval.

28 U.S.C. § 1927 provides the following: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[T]he Fifth Circuit has not determined whether a *pro se* litigant can be sanctioned under § 1927." *Gallagher v. Paxton*, No. 18-575, 2019 WL 5390546, at \*2 (E.D. Tex. May 15, 2019), *report and recommendation adopted as modified*, No. 18-575, 2019 WL 4267438 (E.D. Tex. Sept. 10, 2019) (citing *Simmons v. Methodist Hosps. of Dallas*, 632 F. App'x 784, 787 n.5 (5th Cir. 2015) ("We note that this court has not yet addressed whether a pro se litigant can be subject to sanctions under section 1927 and need not do so today.")). Given the sanction of dismissal with prejudice, the Court finds it inappropriate to award additional sanctions under this statute even if available to sanction *pro se* litigants.

This Court also has the authority to sanction a *pro se* plaintiff by requiring him to first obtain court approval for all future *pro se* filings. *Chaney v. Races and Aces*, No. 11-399, 2014 WL 1256569, at \*3 (M. D. La. Mar. 26, 2014); *Thibeaux v. Cain*, No. 12-84, 2012 WL 832432, at \*3 (M.D. La. Feb. 29, 2012). In accordance with the Fifth Circuit's instructions, sanctions are necessary and warranted to control this court's docket and maintain the orderly administration of justice. *Dilworth v. Box*, 53 F.3d 1281 (5th Cir. 1995); *Mendoza v. Lynaugh*, 989 F.2d 191 (5th Cir. 1993); *Moody v. Miller*, 864 F.2d 1178, 1179 n.2 (5th Cir. 1991). Sanctions which may be imposed include monetary sanctions, assessment of court costs, suspension of the plaintiff's right to proceed in forma pauperis until previous litigation sanctions and costs are paid, a requirement that the plaintiff obtain judicial pre-approval for all future pro se filings, or other appropriate

sanctions. *Id.*; *Lay v. Anderson*, 837 F.2d 231 (5th Cir. 1988); *Mayfield v. Collins*, 918 F.2d 560, 562 (5th Cir. 1991).

Given his behavior in the instant litigation, and clear propensity for filing multiple nuisance lawsuits to reach settlements as a source of income, the Court finds it appropriate to require Plaintiff to obtain judicial pre-approval for all future pro se filings in this district. The Court does not, however, find it appropriate to order any additional monetary sanctions given the sanction of dismissal with prejudice.

## III.    Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the LSU Defendants' Motion for Sanctions (R. Doc. 145) be **GRANTED IN PART and DENIED IN PART**. The parties shall bear their own costs.

**IT IS FURTHER RECOMMENDED** that Plaintiff's action be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Plaintiff be ordered to obtain judicial pre-approval for all future pro-se filings in this district.

**IT IS FURTHER RECOMMENDED** that the remaining pending motions in this action (R. Docs. 94, 96, 141, 142, and 151) be **DENIED AS MOOT.**

Signed in Baton Rouge, Louisiana, on June 29, 2020.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**